**Randahl Crawford WITT, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. KCD 29790.**

Missouri Court of Appeals, Western District.

April 30, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 11, 1979.

Application to Transfer Denied July 17, 1979.

---

Gerald Kiser, Public Defender, Seventh Judicial Circuit, Liberty, for movant-appellant.

John D. Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., TURNAGE and KENNEDY, JJ.

DIXON, Judge.

Movant appeals the denial of a Rule 27.26 motion claiming error in the court's findings on three issues. The issues are a claim of ineffective assistance of counsel, error in the trial court's failure to *sua sponte* hold a hearing on the movant's mental fitness to proceed, and a claim that the movant's plea was not voluntarily made because of a lack of understanding of the charges.

The underlying plea proceeding arose out of a felonious assault with malice in which an elderly store clerk was stabbed 27–30 times during an unsuccessful robbery attempt. Defendant was sentenced to life

imprisonment on his plea. Movant was represented by two lawyers at the time of his plea. They had originally entered a plea of not guilty by reason of mental disease or defect. At the request of counsel, movant was evaluated by the staff at Fulton State Hospital, at the St. Joseph State Hospital, and at the Western Missouri Mental Health Center. He was further examined by a private physician employed by his family. All of these reports indicated that the movant was competent to stand trial and had the necessary mental capacity to understand the proceedings and to assist in his own defense. The private physician rendered an opinion that he believed defendant was suffering from a mental disease or defect at the time of the offense.

There was a full evidentiary hearing on the movant's motion and the prosecutor and one of the defense attorneys in the original case testified. The record includes two of the mental evaluations, the pre-sentence report, and transcript of the guilty plea hearing in addition to the evidence heard on the 27.26 motion.

### I

On the issue of ineffective assistance of counsel, movant argues that his counsel should have contested the findings with respect to his mental fitness to proceed or informed him that they could be contested. The thrust of movant's argument is that the conflicting reports with respect to his mental status at the time of the offense should have raised a bona fide doubt in the minds of his counsel as to his fitness to proceed.

■ *Miller v. State,* 498 S.W.2d 79 (Mo. App.1973), is the leading case in this area and provides a yardstick by which we can measure the instant case. In *Miller,* a 27.26 movant was granted relief under his 27.26 motion because his attorney had serious doubts about his client's fitness to proceed but did not request a court hearing on the matter. The standard of conduct expected of an attorney in such situation is plainly delineated in *Miller:*

"If in the course of the prosecution defendant's counsel comes to the honest belief that his client lacks present capacity for rational understanding and cooperation, the integrity of the adversary process and his duty of advocacy require counsel to use the procedures the law allows for adjudication of that issue. (citations omitted). Consistently with this principle, our courts have placed much reliance upon the absence of doubt by defense counsel as to his client's competency to assume the regularity of criminal proceedings." (citations omitted). *supra* at 86–87.

Other cases are in accord with the standard set out in *Miller. Shubert v. State,* 518 S.W.2d 326, 328–329 (Mo.App.1975); *Collins v. State,* 479 S.W.2d 470 (Mo.1972); *Griggs v. State,* 479 S.W.2d 478, 480 (Mo. 1972); *Davis v. State,* 517 S.W.2d 97, 102–104 (Mo.1974).

■ One of movant's trial counsels testified at the 27.26 hearing that the movant was able to assist them and did assist them. The findings in all of the psychiatric reports were that movant was competent to assist in his defense. Not only is there no affirmative evidence of any behavior or attitude of the movant which would have given counsel any basis for concluding that movant could not assist in his defense, the conferences between counsel and movant in the presence and with the assistance of movant's father demonstrate the movant's understanding of the proceedings and his participation in his own defense. The contention is squarely answered by *Shubert v. State* :

"While movant urges that counsel should have challenged the report, no such duty is imposed on a defense attorney. In a case such as this, where serious offenses are involved, attorneys often request mental examinations for defendants under Chapter 552, RSMo 1969, V.A.M.S. Upon receipt of a report that a defendant is competent to stand trial, defense counsel is not obliged to pursue the question and to demand a judicial hearing on the issue." *supra* at 328.

The trial court's findings on this first issue are not clearly erroneous.

## II

■ A second and related claim by movant is his contention that the trial court erred in not holding a hearing *sua sponte* on his competence to stand trial.

Movant relies on *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) and *Briggs v. State,* 509 S.W.2d 154 (Mo. App.1974) to support his contention that the court should have held a hearing *sua sponte* to determine his fitness to proceed. Those cases use the language "bona fide" doubt as the test for whether the court should hold a hearing.

In both *Pate* and *Briggs,* the record before the court indicated that although the defendants were certified as competent to proceed, there was a finding of mental disease or defect *and* a recommendation of continued hospitalization of the defendants during the time they were awaiting trial. It is the conjunction of these elements that should raise the "bona fide" doubt in the court's mind as to the fitness of a defendant to proceed.

The court in the instant case had before it four reports, three of which said that the appellant was free of mental disease or defect and *all* of which certified him as capable of assisting his counsel. None of the reports recommended hospitalization pending trial, although they did recommend future psychiatric evaluation and help. There was nothing in the movant's behavior before the court or with his appointed attorneys that would raise any doubt as to his fitness to proceed.

This case seems much closer to *Miller v. State, supra,* and *Bryant v. State,* 563 S.W.2d 37 (Mo. banc 1978). *Bryant,* particularly, distinguishes the holdings in *Briggs* and *Pate,* and clarifies their application to cases where strong conflicting elements appear in the record before a judge. *Miller* is controlling, and the following language is directly relevant to the instant case:

"The court is not required to conduct a competency bearing *sua sponte* in the absence of circumstances which render suspect the psychiatric opinion which has certified an accused fit to proceed. (citations omitted) . . . The suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial." (citations omitted). *supra* at 85.

The court's finding that the movant had the capacity to understand the proceeding against him and to assist in his defense, and that it was not necessary for the trial court to hold a hearing *sua sponte* is not clearly erroneous.

## III

The final contention is that movant's plea of guilty was not voluntary because he did not understand the meaning of the term "malice aforethought" in the charge. Movant claims that if he had known that the term meant that he stabbed the victim "on purpose" he would not have pleaded guilty. Movant argues that his statement that he "did not mean to" stab the victim in his guilty plea hearing supports factually his lack of understanding. That remark in context referred only to the first wound inflicted on the victim. Some 27–30 stab wounds were finally inflicted after which the movant tied up the victim and attempted unsuccessfully to open the cash register.

The testimony during the 27.26 hearing and the transcript of the guilty plea hearing demonstrate that movant's attorneys explained the charge to him, including the distinction between assault with malice and assault without.

■ The argument that movant did not stab the clerk "on purpose" is a misconception of the term "malice" aforethought." The term does not mean some act with a malevolent purpose or intention. "Malice, however, does not mean spite or ill will, but the intentional doing of a wrongful act without just cause or excuse, and not spite or ill will." *State v. Smart,* 485 S.W.2d 90, 93 (Mo.1972). The record here amply sup-

ports a finding of intention. The finding that movant pleaded guilty voluntarily was amply supported and was not clearly erroneous.

The denial of appellant's 27.26 motion is affirmed.

All concur.